UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMIYL AKRAM,

     Plaintiff,

v.                               CASE NO. 8:21-cv-1948-MCR

ACTING COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION,

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

    **THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding his application for supplemental security income ("SSI"). Following an administrative hearing held on October 13, 2020, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from May 28, 2019, the date Plaintiff's application was filed, through December 24, 2020, the date of the ALJ's decision. (Tr. 30-37.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is due to be **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 17, 19.)

## I.   Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

### A.   Issues on Appeal

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ erred by failing to properly address and evaluate his complaints of blurred and double vision due to multiple sclerosis ("MS") and fourth cranial nerve palsy.  (Doc. 21 at 2, 6-7.)  Specifically, Plaintiff explains that:

> At the Administrative Law Judge hearing, the claimant advised that he has vision problems[,] including double vision (T. 55).  He stated that due to fourth nerve optical nerve palsy, he had double vision and had to relinquish his CDL license (T. 55).  He further stated that he was told by his ophthalmologist that the palsy was not correctable with eyeglasses (T. 60).
>      Treatment records from the claimant's ophthalmologist dated July 6, 2020, confirm fourth nerve palsy and symptoms of diplopia (T. 852-806)[.]
>      Although the decision states that imaging of the claimant's eyes were essentially unremarkable (Exhibit 21F) (T. 34), this does not address the claimant's complaints of blurry vision or double vision. The claimant's condition of fourth nerve optical palsy was virtually ignored.

(*Id.* at 7.)

Next, Plaintiff argues that the testimony of the vocational expert ("VE") did not constitute substantial evidence because the ALJ's hypothetical question posed to the VE failed to include Plaintiff's complaints of blurred and double vision, and was therefore incomplete.  (*Id.* at 2, 7-9.)  Plaintiff continues:

> Assuming, arguendo, that the claimant had periodic blurred and double vision due to his [MS] and/or fourth nerve

> optical nerve palsy [sic] condition, the hypothetical to the [VE]
> should have included the claimant's visual limitation as a result.
>     All of the jobs identified by the [VE] specialist require
> frequent near visual acuity, according to the Selected
> Characteristics of Occupation, the companion publication to the
> Dictionary of Occupational Titles. . . .

(Doc. 21 at 9.)

As to the first issue, Defendant responds that Plaintiff fails to prove his

residual functional capacity ("RFC") should include additional limitations

related to his vision. (Doc. 22 at 5.) As to the second issue, Defendant

asserts that Plaintiff fails to point to any evidence that his near acuity is

affected, and that the alternative jobs identified by the VE do not require far

acuity, depth perception, color vision, or field of vision. (*Id*. at 8-9.)

## B.    Standard for Evaluating Subjective Symptoms

When a claimant seeks to establish disability through his own

testimony of pain or other subjective symptoms, the Eleventh Circuit's three-

part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

1991) (per curiam). "If the ALJ decides not to credit such testimony, he [or

she] must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms
> the severity of the alleged pain arising from that condition or (3)
> that the objectively determined medical condition is of such a
> severity that it can be reasonably expected to give rise to the
> alleged pain.

*Id.*

Once a claimant establishes that his subjective symptom is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. §§ 404.1529(a), 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561.  *See also* SSR 16-3p[2] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

---

[2] SSR 16-3p rescinded and superseded SSR 96-7p, effective March 28, 2016, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

. . .

In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[3] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

. . .

In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

---

[3] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;

- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;

- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;

- That the individual may not be able to afford treatment and

may not have access to free or low-cost medical services;

- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;

- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

## C.   Don J. Perez, M.D.'s Ophthalmology Report

On July 6, 2020, Plaintiff presented to Dr. Perez for an eye exam with complaints of blurred vision, double vision, headaches, difficulty driving, and difficulty reading.  (Tr. 852.)  That same day, Dr. Perez referred Plaintiff for a brain/optical MRI without contrast with indications of MS, 4th nerve palsy, and diplopia.  (Tr. 860.)  The Final MRI Report stated:

> FINDINGS: The examination is mildly limited due to motion. The globes are otherwise normal. There is no proptosis. The bilateral optic nerves are grossly within normal limits. There is no nerve sheath dilatation. The extraocular muscles and lacrimal glands are unremarkable. Limited visualization of the brainstem demonstrates patchy T2 hyperintense foci in the pons and in the posterior right midbrain (image 11, series 4), which is in the expected vicinity of the right 3rd or 4th cranial nerve nuclei. There is no associated diffusion restriction in this region to suggest an acute process.
>
> IMPRESSION:
> 1. Unremarkable unenhanced MRI of the orbits.
> 2. Demyelinating lesions in the right midbrain and bilateral pons, as detailed above.

(Tr. 858.)

### D.        Plaintiff's Hearing Testimony

On October 13, 2020, Plaintiff appeared for a telephonic hearing before

ALJ Ryan Kirzner.  (Tr. 43-69.)  Plaintiff testified in relevant part as follows:

> Q      So Jamiyl, in terms of your multiple sclerosis, can you talk to us about the symptoms you have related to that?
> A      Yes, ma'am.  Since the diagnosis, I've noticed that I'm progressively experienc[ing] a difficult time getting in and out of bed.  I notice that I [have] incontinence issues going on with my bowels into the bathroom, shortness of breath, [and] fatigue.  My anxiety, impatience level[s] are through the roof, so much so to the point where it's causing a problem with inside [sic] relationship with my wife. I'm cranky and impatient. I'm having circulation problems with my legs and numbness in my legs and my eyesight[.] I believe just like maybe a month and a half, maybe not two months ago I was diagnosed with what is a fourth nerve optical palsy in my eyes which caused me to completely pretty much relinquish my CDL driver's license because without you know adequate sight, with the double vision and everything else, I just—I came to the understanding that I couldn't—I could no longer drive the trucks and things like that . . .
> . . .
> Q      Now in terms of the palsy for your—in your eye, are they giving you glasses or what kind of treatment are they trying to do to help you with that right now?
> A      They've prescribed for me glasses, but they actually told me that the palsy is my eyes[,] it wasn't correctable and I'm on a fixed accounting insurance coverage which doesn't cover the cost of the glasses, so I've got a prescription for glasses that I haven't been able to fill because I'm not working.  I don't have any income so I have no way to buy the glasses to see what they—it will do but they told me my vision in itself is good but the optical nerve palsy it came on all of a sudden with me which I equated to the MS and the deterioration of whatever was going on . . .

(Tr. 54-55, 60.)

**E.      The VE's Hearing Testimony**

On October 13, 2020, VE Ghari Shirley, appeared for a telephonic hearing before ALJ Ryan Kirzner.  (Tr. 61-67.)  During hypothetical questioning by the ALJ, the VE testified in relevant part as follows:

> Q      Thank you.  [I'd] [l]ike you to assume a hypothetical individual of the claimant's age and education with the past jobs that you just described and for the purpose of this we're assuming at least two years of college.  Further assume the individual's limited to light work as it is defined by the Dictionary of Occupational Titles.  With the additional restriction, the individual would be limited in pushing in the left upper extremity to frequent; reduced in the left lower extremity in the operation of foot controls would also be reduced to frequent; limited to no more than occasional climbing of ladders, ropes and scaffolds; frequently climbing ramps and stairs, balance, stoop, kneel, crouch and crawl; would also be limited to frequent reaching with the left upper extremity; further need to avoid extremes in temperature—avoiding concentrated exposure to extremes in temperature both heat and cold and avoiding concentrated exposure to workplace hazards which I'm defining as moving mechanical parts and unprotected heights.  Given those limitations[,] could the hypothetical individual perform any of the claimant's past work either as it's actually performed or as it's generally performed in the national economy?
>
> A      No, Your Honor.
>
> Q      Would the hypothetical individual be able to perform any other work in the workforce and if so, could you give me a few examples?
>
> A      Yes, Your Honor.  First job I have is cleaner, housekeeping.  DOT code is 323.687-014.  SVP level of the job is 2.  Exertion level of the job is light and there are 102,000 jobs in the national economy.  Next, job I have is bottling line attendant.  DOT code is 920.687-042.  SVP level of the job is 1.  Exertion level of the job is light and there are 11,000 jobs in the national economy.  The last job I have is bagger.  DOT code is 920.687-018.  SVP level of the job is 1.  Exertion level of the job is light and there are 1,000 jobs in the national economy.

. . .

Q      . . . [F]or the second hypothetical, I'd like you to assume the same limitations as [hypothetical] #1 but now we combine [the] total of standing and walking within an eight-hour day would be reduced to no more than four hours.  With that additional restriction, would the hypothetical individual be able to perform the other [jobs]? . . .

A      Yes, Your Honor.  The jobs that I mentioned earlier, that individual would not be able to perform those jobs.

Q      Okay.

A      The substitute job that I do have is counter clerk.  DOT code is 249.366-10.  SVP level is 2.  Exertion level of the job is light and there are 17,000 jobs in the national economy.  That's the only job I'd be able to present, Your Honor.

Q      That—okay so, with that limitation there would not be any other work in the workforce at any exertional level for that hypothetical?

A      At the sedentary exertional level, Your Honor, but not—

Q      Okay.

A      --at the light.

Q      Okay.  Would there be sedentary jobs that could be performed even though I identified this as light and then I reduced the standing and walking so that may obviously limit the light range but are there sedentary jobs that could be performed with this hypothetical?

A      Yes, Your Honor.

Q      Okay.

A      First job I have is final assembler.  DOT code is 713.687-018.  SVP level of the job is 2.  Exertion level of the jobs is sedentary and there are 17,000 jobs in the national economy.  The last job I have is callout operator.  DOT code is 237.367-014.  SVP level of the job is 2.  Exertion level of the job is sedentary and there are 8,500 jobs in the national economy.

. . .

Q      Now since I hadn't looked all the way down far enough my next hypothetical was Hypothetical #1 but now limited to sedentary work.  . . .  Is there—are those two jobs that would exist or would there be a third job at the sedentary level that could be performed with that hypothetical? Again, now assuming sedentary work but the limitations in Hypothetical #1.

A      Understood.  DOT title is document preparer.  DOT code is 249.587-018.  SVP level of the job is 2.  Exertion level of the job is sedentary and there are 40,000 jobs in the national economy.

(Tr. 63-66.)

## F.      ALJ's Decision

At step two of the sequential evaluation process,[4] the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis, hypertension, obesity, degenerative disease of the left shoulder, degenerative disc disease of the lumbar spine, and obstructive sleep apnea.  (Tr. 32.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 33.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work with limitations as follows:

[T]he combined total of standing and walking in an [eight]-hour day will be reduced to [four] hours; pushing and pulling with [the] left upper extremity [is] reduced to frequent; operation of foot controls with lower-left extremity [is] reduced to frequent; occasional climbing of ladders, ropes, and scaffolds; frequent[] climbing of ramps and stairs, balance[ing], stooping, kneeling, crouching, and crawling; frequent reaching with [the] left upper extremity; and avoid[ing] concentrated exposure to extreme in [sic] temperatures, both heat and cold; and [avoiding] hazards such as moving mechanical parts and unprotected heights.

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 416.920(a)(4).

(*Id*.)  The ALJ stated that he had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence."  (*Id*.)  The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision."  (Tr. 34.)  Concerning Plaintiff's testimony regarding issues with his vision, the ALJ noted that "[i]maging of the claimant's eyes were essentially unremarkable (Ex. 21F)."  (*Id*.)

Then, at step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as an air conditioning mechanic and a tractor trailer truck driver.  (Tr. 36.)  At the fifth and final step of the sequential evaluation process, considering Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as counter clerk (DOT No. 249.366-010), final assembler (DOT 713.687-018), and callout operator (DOT 237.367-014).  (Tr. 36-37.)  Therefore, the ALJ concluded that Plaintiff was not disabled from May 28, 2019, through December 24, 2020.  (Tr. 37.)

13

### G.      Analysis

The Court finds that the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record. Concerning Plaintiff's first issue, the Court finds that the ALJ properly addressed Plaintiff's complaints of blurred and double vision due to MS and 4th cranial nerve palsy.  To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Here, the ALJ discredited Plaintiff's subjective symptoms regarding his vision because "[i]maging of [his] eyes were essentially unremarkable."  (Tr. 34 (internal citation omitted).)   While the ALJ could have expounded on his rationale, the Final MRI Report did not support any severe functional limitations.  (*See* Tr. 858 (finding unremarkable extraocular muscles and lacrimal glands, normal globes, and an unremarkable MRI of the orbits).) Similarly, the ophthalmologist's examination notes did not support any

14

severe functional limitations.  It appears Plaintiff only visited Dr. Perez one time, and Dr. Perez's examination notes were partially illegible, revealing only minimal loss in Plaintiff's near acuity.  (*See* Tr. 853 (finding Plaintiff's visual acuity to be 20/60).)  Moreover, mere existence of diplopia, 4th cranial nerve palsy, and MS does not reveal the extent to which these impairments limit Plaintiff's ability to work.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Thus, Plaintiff's subjective statements regarding his vision were properly discounted.

As to Plaintiff's second issue, the Court finds that the ALJ provided complete hypotheticals to the VE, and his reliance on the VE's responses was proper.  When relying upon the testimony of a VE, the ALJ must pose hypothetical questions to the VE that encompass all of the limitations from the plaintiff's impairments.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180.  If the ALJ presents the VE with incomplete hypothetical questions, the VE's testimony will not constitute substantial evidence.  *Id*.

Here, the ALJ found that the evidence demonstrated that Plaintiff retained a limited ability to work despite his severe impairments.  The ALJ's hypotheticals to the VE fully accounted for Plaintiff's limitations with his left lower and upper extremities, as well as other postural and environmental limitations.  On this record, the ALJ was not obligated to include any limitations regarding Plaintiff's vision in the hypotheticals because

substantial evidence did not support doing so.  As discussed above, there was no evidence in the record for the ALJ to gauge how often Plaintiff experienced blurred and/or double vision (*i.e.*, whether the issue was constant or if it occurred periodically), and there was no evidence in the record to suggest to what extent, if any, Plaintiff was precluded from the alternative jobs provided by the VE.  While the ALJ has an affirmative duty to develop the record, Plaintiff's counsel did not assert any concerns regarding the omission of visual impairments to the VE during the hearing (*see* Tr. 67), nor did Plaintiff argue this issue on appeal.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Moreover, the claimant bears the burden of proving that he is disabled by producing evidence that supports his claim.  *Id*.  As such, this Court may not speculate as to the severity of Plaintiff's vision issues.  Accordingly, the Court finds that the ALJ properly relied on the VE's testimony.

### III.   Conclusion

The Court does not make independent factual determinations, reweigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on de novo review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision

16

that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1.　　The Commissioner's Decision is **AFFIRMED**.

2.　　The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on February 27, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record